**CLIFFORD W. L. CALLWOOD, Plaintiff**

v.

**ELSE E. CALLWOOD, Defendant**

Civil No. 37-1954

District Court of the Virgin Islands

Div. of St. Thomas and St. John at Charlotte Amalie

March 28, 1955

*See, also, 129 F. Supp. 582*

*Same case on appeal, see p. 579, this volume*

JOHN L. PHILLIPS, JR., ESQ., and FRANCISCO CORNEIRO, ESQ., St. Thomas, Virgin Islands, *for plaintiff*

DUDLEY, HOFFMAN and McGOWAN, St. Thomas, Virgin Islands, (GEO. H. T. DUDLEY, ESQ., St. Thomas, Virgin Islands of counsel), *for defendant*

MOORE, *Judge*

This is an action for specific performance of an agreement to divide certain real estate between mother and son.

The action is brought by the son, Clifford W. L. Callwood, who was represented by John L. Phillips, Esquire, associated with Francisco Corneiro, Esquire, as trial lawyer. The defendant Else E. Callwood was represented in this action by Dudley, Hoffman and McGowan, George H. T. Dudley, Esquire, of counsel.

The cause of action being equitable in nature, the Court has equitable jurisdiction of the matter. Plaintiff, however, requested a jury of six to sit with the Court. Since at equity a jury trial is not a matter of right, the submission of issues of fact to a jury is purely discretionary with the court and a jury's verdict or special finding is advisory only. In equity the jury renders a verdict on such specific questions as are put to it by the court, and the equity court in its discretion may then adopt the verdict in toto or partially. 19 Am. Jur. 274, 277. A jury was granted by the Court in this case to make advisory findings of fact pursuant to plaintiff's request.

The plaintiff, C. W. L. Callwood, represented to the Court that the plaintiff and the defendant, Else E. Callwood, executed a deed of partition pursuant to a partition agreement; that the said partition deed was executed on August 31, 1953, in the presence of two witnesses who subscribed their names as such; that the defendant thereafter refused to acknowledge her signature on the deed before a competent officer; and that the deed cannot be recorded without the acknowledgment of the defendant or proof of the conveyance. Plaintiff, therefore, prays the Court to take proof of the execution of the conveyance and to place the deed in recordable form.

Defendant alleges that the instruments pleaded were signed on Sunday, August 30th, and not on August 31st as claimed by plaintiff, and sets up as a special defense that the signing of the instruments dated August 31, 1953, and

relinquishing certain property rights of defendant, was procured through the "artifice and trickery" of John L. Phillips, Esquire, attorney for plaintiff; that defendant never intended to transfer her interest in said properties in the proportions appearing in said instruments; and that upon discovery of the true import of the same, defendant refused to conclude their execution or to procure the approval of Carl A. Anduze, the substituted testamentary guardian of the properties; and that by reason of the trickery employed, said instruments do not represent the will, deed or understanding of defendant in the premises; and that, therefore, they are void. Defendant accordingly requests the Court to order surrender of the instruments by the plaintiff for cancellation.

Pursuant to Court order defendant submitted the following bill of particulars specifying the alleged "artifice and trickery" employed by John L. Phillips, attorney for plaintiff:

"1. Friday, August 28, 1953:

"a. Plaintiff's attorney, John L. Phillips, Jr. Esq., hereinafter designated as Phillips, telephoned defendant saying: 'Although I am your son's lawyer, may I come to see you about the partition of the properties? to which inquiry defendant replied: 'Yes'

"b. That thereafter Phillips came to defendant's home at Brittania House at about 10:00 a.m. and remained until noon; then returned at about 2:30 and remained until about 4:00 p.m., then returned at about 5:30 p.m. and remained until 6:30; then returned at about 8:00 p.m. and remained until about midnight.

"c. That during said interviews Phillips told defendant that plaintiff was about to sell his interest in the properties involved herein to one Katzin and that the only way to prevent being associated with a stranger in the ownership of said properties was to execute a partition deed with plaintiff. That said representation was false.

"d. That during said interviews defendant told Phillips that Carlos A. Torres, Esq., and his father were her attorneys and

that they had cautioned defendant not to sign any papers without their prior approval. That Phillips told defendant to call Torres and he, Phillips, would speak to him.

"e. That during said interviews defendant showed Phillips a memorandum dated December 18, 1952 prepared by George H. T. Dudley, Esq., in collaboration with E. V. Dench, Esq., the then attorney for plaintiff, and said to him that this division of the property as drawn by Mr. Dudley was equitable except for the provision concerning Brittania House, and that if Phillips could devise some means of resolving this Brittania House problem in accord with said memorandum defendant might agree to a division.

"2. Saturday, August 29, 1953:

"a. Phillips came to the home of defendant at about 10:00 a.m. and remained until about 11:30.

"b. That during said interview defendant told Phillips that defendant had spoken to her attorneys in Puerto Rico and that they would come to St. Thomas the following week and arrive here not later than Thursday, September 3rd.

"c. That during said interview Phillips said to defendant that he had persuaded plaintiff to agree that if Brittania House were sold by the mutual consent of defendant and life tenant and the plaintiff that the proceeds would be divided between plaintiff and defendant equally.

"d. That defendant indicated to Phillips her desire to discuss this proposed division with C. A. Anduze, substituted testamentary guardian of the properties herein, and Phillips agreed to come for defendant at 4:00 p.m. so that they might both go to see the said Carl A. Anduze concerning said matter.

"e. That Phillips failed to come to the home of defendant at 4:00 p.m. as agreed but rather came at 6:00 p.m. and informed defendant that he had already seen Mr. Carl A. Anduze. That Phillips remained at the home of defendant until 8:00 p.m. Phillips returned at about 8:30 and remained until about 11:30 p.m.

"f. That during said interviews Phillips took notes for a new proposed division and said to defendant that he would complete the draft at his home.

"3. Sunday, August 30, 1953:

"a. At 9:30 a.m. defendant called plaintiff and requested an interview with plaintiff at noon at her home, to which plaintiff agreed. Plaintiff did not keep this appointment.

"b. Phillips came to the home of defendant at about 4:30 p.m. with drafts of the agreement and deed in issue, and representing that plaintiff was then about to consummate the sale of his interest to the said Katzin at the offices of Croxton Williams, Esq., urged defendant to hurry and get dressed to go to the office of Croxton Williams in order to intercept said deal — which representation was false.

"c. Phillips showed defendant that section of the partition agreement making the provision for the joint sale of Brittania House by mutual consent of plaintiff and defendant heretofore mentioned. Defendant impressed with the idea that the instrument provided for a 50–50 division of the properties, indicated her assent, signing the document.

"d. Thereupon Phillips called plaintiff, who immediately came to defendant's home and together Phillips and plaintiff rushed defendant to the offices of Croxton Williams, Esq., at the San Jose Hotel, now the Crown Bay Hotel.

"e. They arrived at the offices of Croxton Williams, Esq.; defendant was rushed into signing both instruments without the opportunity to examine either in the presence of plaintiff, his attorney, Phillips, and the said Croxton Williams, Esq.

"f. That after signing said instruments defendant was given a copy of each and returned home by Phillips.

"g. That immediately upon getting home and examining the deed of partition defendant discovered for the first time that Phillips, attorney for plaintiff, had procured the execution by defendant of a division of said properties one-third — two-thirds, which was not the understanding or agreement of defendant, whereupon defendant immediately called up Croxton Williams, Esq., to inquire as to her right to repudiate said signature.

"4. Monday, August 31, 1953:

"a. Phillips called defendant to request that defendant come to sign the original of the partition agreement, whereupon defendant informed Phillips that defendant would not sign said original and was repudiating the execution of the previous day of both instruments, inasmuch as the documents did not represent defendant's wishes, understanding and/or specific instructions to Phillips that under no circumstances would defendant agree to a division of the properties with plaintiff in any ratio other than a 50–50 division in accord with the memorandum of December 18, 1952 previously discussed and shown to Phillips."

159

At a pre-trial conference the issues involved in the case were limited to three as follows:

1. Were the instruments consisting of an agreement and the deed procured by fraud, to wit: through the artifice and trickery of plaintiff's attorney?

2. Whether the defendant in signing the said deed did so of her own free will with knowledge of the contents and with intent to convey the said properties in the proportion appearing in the said instrument?

3. As a matter of law, did the defendant have the power under the will involved in this case to conclude the execution of these instruments without the approval of Carl A. Anduze, testamentary guardian of the said properties? As to this issue there is a factual question; plaintiff claiming that he did have such approval, and defendant claiming that he did not have such approval.

The case went to trial on these issues and at the end of the evidence fifteen questions were put to the jury for a special verdict. The questions and the jury's answers thereto (by ten or more members of the jury) were as follows:

"Question 1. Was the defendant, Else E. Callwood, represented by or being advised by the law firm of Carlos A. Torres of San Juan, Porto Rico, in the matter of the division of the same property during the time this partition of property was being worked out?

"Answer. Yes (12)

"Question 2. If so, did Attorney John L. Phillips, or the plaintiff, Clifford W. L. Callwood, know this?

"Answer. Yes (12)

"Question 3. Did the defendant, Else E. Callwood, employ Attorney John L. Phillips to act in her behalf as her attorney in the matter of the partition agreement and deed herein?

"Answer. Yes (12)

"Question 4. If so, did the defendant, Else E. Callwood, give her consent to have Attorney John L. Phillips represent both herself and the plaintiff, her son, at the same time in this transaction?

160

"Answer. Yes (10)

"Question 5. Was the deed and agreement herein signed on Sunday, August 30th instead of on Monday, August 31st?

"Answer. Yes (12)

"Question 6. Was the deed herein signed on Sunday, August 30th to become effective on August 31st?

"Answer. Yes (12)

"Question 7. Does the deed show evidence of a change by erasing the month of 'September' and inserting therein the month of 'August'?

"Answer. Yes (12)

"Question 8. Did Attorney John L. Phillips tell the defendant, Else E. Callwood, that the proposed division of properties included the selling of Brittania House, No. 40A Taarneberg, and the dividing of the proceeds therefrom equally between Mrs. Callwood and her son?

"Answer. No (10)

"Question 9. Did Mrs. Else E. Callwood have knowledge before she signed the deed that the deed provided that the division of the properties was made on the basis of 1/3 to her and 2/3 to her son?

"Answer. Yes (11)

"Question 10. Did Attorney Phillips tell the defendant, Mrs. Else Callwood that her son was about to sell his interest in the estate to Dr. Katzin?

"Answer. No (10)

"Question 11. Did Attorney John L. Phillips use artifice or trickery in procuring the defendant's signature to the agreement and deed?

"Answer. No (11)

"Question 12. Did Attorney John L. Phillips make any material false representation or conceal any material fact from the defendant, Else E. Callwood, before she signed the deed in question?

"Answer. No (11)

"Question 13. Was the defendant Else E. Callwood 'pressured' or 'harassed' by Attorney John L. Phillips into signing the said deed?

"Answer. No (10)

"Question 14. Did the defendant have full knowledge of all of the contents of the deed when she signed it?

"Answer. Yes (10)

161

"Question 15. Did the defendant sign the deed of her own free will without pressure or harassment and with full knowledge of its contents?

"Answer. Yes (10)"

 Since in an equity case it is the court's province to make the findings of fact as well as of law, it is necessary for the court to analyze the findings of the jury and determine whether it will accept, reject, or give limited weight to the special findings of the jury.

 With respect to questions 1 and 2 as to whether the defendant was being represented by Messrs. Torres of San Juan and whether attorney Phillips knew this, there was no controversy about the fact that Messrs. Torres were representing Mrs. Callwood and that attorney Phillips knew this. The only controverted point being attorney Phillips' testimony that he did not understand that Messrs. Torres were still representing the defendant at the time that he prepared the instruments in question. The jury's advisory findings on questions 1 and 2 are, therefore, adopted as the Court's findings.

With respect to question 3 the jury found that the defendant did employ attorney Phillips to act in her behalf in the matter of the partition of her property. The only evidence on this point was the testimony of attorney Phillips who testified that Mrs. Callwood did retain him to draft a partition agreement, and the testimony of the defendant herself who maintained that she did not employ attorney Phillips to represent her for she understood that he was representing her son and she had no objection to conferring with him on the matter of a partition. The jury was, therefore, entitled to believe attorney Phillips over the defendant. Moreover, there is the additional evidence that after the instruments were drawn by attorney Phillips, the defendant accompanied by attorney Phillips went down to the San Jose Hotel and signed the instruments prepared

162

by him. The Court, therefore, adopts the jury's verdict on this question.

Question 4 was answered in the affirmative by the jury to the effect that defendant consented to have attorney Phillips represent both herself and her son at the same time in the matter of this partition. Since defendant testified that she knew that attorney Phillips was representing her son, it is clear that with this knowledge she permitted attorney Phillips to draw the instruments which she later signed. Also, defendant permitted attorney Phillips to pay her a number of visits for the purpose of discussing the documents with her. Consequently, the Court finds the jury's verdict supported by the evidence and, therefore, adopts the said finding of the jury.

As to questions 5 and 6 regarding the date on which the instruments were signed and the date on which they were to become effective, there was no conflict in the evidence that the instruments were signed on Sunday, August 30, 1953, and initialed to become effective as of August 31, 1953. Accordingly, the jury so found. These questions were put to the jury for a positive finding since defendant questions the validity of a deed executed on Sunday, which legal point will be discussed after the findings of fact.

On question 7 the jury found, and upon examination of the document there can be no doubt, that the date line on the deed was changed by an erasure of the month "September" and the insertion of the month "August". However, while the Court accepts the jury's finding on this question, it attaches no significance to such erasure and change.

With respect to question 8, the jury found in favor of attorney Phillips. In view of the contradictory testimony of the two people involved, and there being no one else who could testify on this point, and the defendant having an in-

terest in breaking the deed which she herself signed, the Court cannot say that her testimony is sufficiently controlling against the denial of attorney Phillips to reject the advisory verdict of the jury. The Court, therefore, believes that the acceptance by the jury of attorney Phillips' testimony over that of defendant is sound and, therefore, adopts the said verdict on this question.

On question 9 as to whether the defendant had knowledge of the ratio which was the basis of the division of the properties between herself and her son, the jury found that she did have such knowledge prior to signing the deed. Although Mrs. Callwood may not have had knowledge of the ratio of the division as expressed in the deed in proportions of fractions, she did have knowledge of which properties she was to get and which properties her son was to get and such knowledge was as good, or better, in view of the fact that she knew personally the condition of every property in the estate. The Court, therefore, adopts the advisory verdict of the jury on this question.

Question 10 relating to the claim of the defendant that she was induced to sign the instruments due to representations by attorney Phillips that her son was about to sell his interest in the estate to one Dr. Katzin was answered by the jury in the negative. That is, the jury accepted the testimony of attorney Phillips that he made no such representations. Since this was again the case of one person's word against another's and the Court believes that the jury was justified in believing attorney Phillips as against the defendant, the Court adopts the jury's advisory verdict on this question.

With respect to questions 11 and 12 the jury concluded that attorney Phillips did not use artifice and trickery in procuring defendant's signature, since it had already found that attorney Phillips did not make the aforesaid misrepresentations. The jury's finding that he did not use artifice

and trickery is, therefore, logical since the "artifice and trickery" is based entirely upon these representations. The jury also found that he did not conceal any material facts from the defendant. Therefore, the jury's verdict on these questions is accepted.

Regarding question 13 the Court notes that at the time attorney Phillips telephoned to attorney Croxton Williams to ask him to act as a witness to the signing of the instruments, he stated to Mr. Williams that as Mrs. Callwood had decided to sign the deed and since she was subject to great changeability of mind, he felt it was important that Mr. Williams meet them to witness her signing of the instruments, despite the fact that it was Sunday. This was, therefore, not done with the purpose of harassing or pressuring Mrs. Callwood but was resorted to as a result of the known variability of defendant's mind and nature. Also, it should be noted that the times prior to the signing of the deed that attorney Phillips spent with Mrs. Callwood were with her consent. The Court, therefore, feels that the jury was warranted in finding that Mrs. Callwood was not harassed or pressured into signing the deed of partition and adopts this finding of the jury.

With respect to question 14, even if defendant's contention were true that she never had an opportunity to read the deed at her home, the testimony of Mr. Williams shows that before the documents were signed the parties were at the San Jose Hotel for a period of 45 minutes during which time Mrs. Callwood did appear to be reading the deed. In addition to that, these two litigants have been quarrelling and litigating over these properties for years and each one is familiar with every detail of each piece of property. The Court, therefore, believes that the jury is fully warranted in its finding that Mrs. Callwood had full knowledge of what she was signing and the Court adopts the said verdict.

Question 15 is actually a summary question, in that the answers to the previous questions virtually determine the answer to this last question. Since the previous questions have been analyzed and the Court has accepted the jury's verdict on the above questions and its finding on this question is in accord with its findings above, the Court adopts the jury's verdict that the defendant signed the deed of her own free will without pressure or harassment and with full knowledge of its contents.

In view of all the above findings, the Court is of the opinion that the defendant, Else E. Callwood, did on August 30, 1953, execute the instruments herein of her own free will and with full knowledge of what she was doing, and that it was only afterwards, when she was considering whether she had made a good bargain or not that she finally decided she had not and wished to repudiate the same. Her refusal the next day to acknowledge her signature caused the deed not to be recordable. However, the testimony and findings herein constitute proof of the execution of the conveyance such as provided for by the (1921) Code of Laws of the Municipality of St. Thomas and St. John, Title II, ch. 15, § 17 (28 V.I.C. § 43).

Following the verdict of the jury, counsel for defendant moved for judgment notwithstanding the verdict on the grounds that the instruments were insufficient in law, insufficient in equity and that the Court is not bound by the verdict of the jury.

The claim of insufficiency in law is based on (1) the fact that the contract was signed on Sunday, a non-secular day, (2) that the instruments are not entitled to be recorded in that they are not acknowledged or certified as required by statute, and (3) that the instruments were not subscribed to by the testamentary guardian of the properties.

As to the first point it may be briefly pointed out

166

that contracts made on Sundays were valid at common law, Swann v. Swann, C.C., 21 Fed. 299, and that, therefore, defendant would have to show that by statute contracts executed on Sundays in this jurisdiction are void or voidable. In the case of Harris v. Cooper, 203 Okl. 678, 225 P.2d 820, 821, cited by counsel, the court held that while the Oklahoma statutes "do not in terms prohibit the making of private contracts of this nature (real estate contract executed on Sunday), it is plain that it was the intention of the Legislature in enacting them to forbid or discourage the transaction of any secular business upon Sunday." The local holiday ordinance, Act of June 16, 1949 (1 V.I.C. § 171), says nothing with respect to the type of business which may or may not be transacted on Sundays. Therefore, in the absence of any statutory provision to the contrary, it is the opinion of the Court that contracts executed on Sundays in this jurisdiction are valid.

With reference to the argument that the deed is not entitled to recording, since it was neither acknowledged nor certified, the Court draws the attention of counsel to sec. 22 of ch. 15 of the Code [1921 Code, Title II, ch. 15, § 22; 28 V.I.C. §§ 122, 132] referred to above which section provides that:

"Every conveyance acknowledged or proved or certified in the manner hereinbefore prescribed by the District Court, may be read in evidence without further proof thereof, and shall be entitled to be recorded in the office of the Recorder of Deeds; but such instrument, if not acknowledged, proved, or certified, shall not be recorded by the Recorder of Deeds."

In accordance therewith the "proof" of the same herein satisfies the alternative provision of the above section and entitles the deed to be recorded.

■ On the third point made by counsel that the instruments are invalid unless subscribed to by the testamentary guardian, the Court is of the opinion that the joint will of C. W. Callwood, deceased, contemplated that the approval

167

of the guardian would be necessary only for such transactions relating to the property of the estate where persons other than the heirs themselves were involved. In this case, the agreed partition of the property is between the life tenant, the wife of the deceased, and the remainderman, the son of deceased. Therefore, since the provision of the will respecting a guardian for the estate was for the benefit of the remainderman, it is the Court's opinion that a transaction involving the remainderman does not need the guardian's approval.

With respect to the claim that the instruments are insufficient in equity, in that they are not free from illegality, misrepresentations, and unfairness, the findings of the jury, which have now been adopted by the Court, establish that the signature on the instruments was obtained of her own free will and without fraud or misrepresentation. Besides, the division contained in the agreement is not widely different from the terms that these two people have been discussing for years. It should also be noted that the joint will in this case provides that "If Mrs. Elsa E. Callwood's retaining our joint estate should cease only 1/3 say one third part of our whole joint estate shall accrue to me Mrs. Elsa E. Callwood, while the balance of 2/3 say two thirds part shall accrue to our joint children share and share alike, as their paternal inheritance." The division as contained in the instruments in question leaves to Mrs. Else E. Callwood at least or more than the 1/3 part called for in the will. Further, in this connection, it is to be noted that there were two children, to wit: Clifford W. L. Callwood, the plaintiff herein, and a daughter who is deceased. Throughout this litigation and all prior litigation between these two parties the plaintiff herein, Clifford W. L. Callwood, has represented that he has a valid assignment of the interest of the deceased sister. There has been no occasion to present and prove such assignment because

168

at no time in this or any of the previous litigation has this defendant Else E. Callwood, either denied or questioned such assignment. Nor has anyone else ever denied or questioned it.

■ As to the last point made by counsel for defendant, the Court has recognized that it is not bound by the verdict of the jury, this being a case in equity, and, accordingly, the Court has analyzed the evidence along with the jury's advisory verdict and entered its own findings as set out above.

■ Therefore, the instruments herein having been proved in court in accordance with ch. 15 of Title II of the (1921) Code (28 V.I.C. §§ 43, 122, 132), and the Court having found them to be valid and validly executed, the said instruments are now eligible for recording in accordance with the provisions of ch. 15, § 22 (28 V.I.C. § 122), provided, however, that at the same time all transfers to the defendant as called for in the agreement are made and recorded.

■ In the matter of Else E. Callwood, Misc. No. 17--1954 (3 V.I. 73), counsel for Clifford W. L. Callwood, plaintiff herein, filed a motion to vacate the order of this Court granting to Else E. Callwood, as her own, a payment of $2,000 out of the $12,000 mortgage owed by Mr. Isaac Paiewonsky on property of the estate. This question is now moot in view of the opinion in this case, in that the agreement herein gives to Mrs. Else E. Callwood outright the mortgage owned by Mr. Paiewonsky. Therefore, the $2,000 which Mrs. Callwood has gotten comes out of property now hers.

Counsel for defendant herein has filed a motion asking the Court to set his attorney's fees in the three cases (Civil No. 365 - 1953, Civil No. 37 - 1954 (3 V.I. 61), Misc. No. 17 - 1954 (3 V.I. 73), involving these two parties and in all of which he has represented Mrs. Else E. Callwood.

This Court will hear the matter between defendant's attorney, George H. T. Dudley, Esq., and the defendant as to fixing the fee herein, which matter may be set for a separate hearing.

Orders may be drawn in this case, Civil No. 37-1954, and also in Misc. No. 17-1954 in accordance with this opinion.